# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION

## CIVIL NO. 2:06CV22

| | |
|---|---|
| SILVIA TEJESOVA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | )   <u>O R D E R</u> |
| ZAHAY MICHAEL BONE, | ) |
| | ) |
| Defendant and | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| ANDREA TEJESOVA, | ) |
| | ) |
| Third-Party Defendant. | ) |
| | ) |
| And | ) |
| | ) |
| EASTERN BAND OF CHEROKEE | ) |
| INDIANS, | ) |
| | ) |
| Intervenor. | ) |
| | ) |

**THIS MATTER** is before the Court on the motion of the Intervenor, the Eastern Band of Cherokee Indians, for vacatur of this Court's orders of

April 18, 2007, and November 13, 2007.  For the reasons stated below, the motion is denied.

## I.  PROCEDURAL HISTORY

This litigation arose out of a traffic accident that took place in August 2006 within the Cherokee Indian Reservation, at the intersection of US Highway 221 and Drama Road.  **Complaint, filed September 1, 2006, ¶¶ 7-8; Defendant's Brief in Support of Motion to Dismiss, filed November 22, 2006, at 1.**  Allegedly, Defendant Zahay Michael Bone drove through a flashing red light and collided with a vehicle containing Plaintiff Silvia Tejesova, who was injured.  **Complaint,** *supra***, ¶ 9.**

Plaintiff filed a complaint in this Court in September 2006, which alleged negligence and negligence *per se*.  *Id.* **¶¶ 11-16.**  The complaint indicated that this Court had diversity jurisdiction under 28 U.S.C. § 1332,[1] because Plaintiff was a resident of Slovakia and Defendant was a resident of North Carolina.  **Complaint,** *supra***, ¶¶ 1-5.**  Defendant moved to

---

[1] That statute provides, in pertinent part:  "[T]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of a State and citizens or subjects of a foreign state[.]"  **28 U.S.C. § 1332(a)(2).**

dismiss the complaint for lack of jurisdiction, arguing that because he was a member of the Eastern Band of Cherokee Indians (hereinafter, the Tribe), and the accident had taken place on tribal land, Plaintiff must bring her suit in tribal court. **Defendant's Brief,** *supra*, **at 2-3.** The Court denied Defendant's motion on April 18, 2007. **Memorandum and Order, filed April 18, 2007.**

Defendant filed an answer to Plaintiff's complaint in May 2007. **Answer, Defenses, and Third Party Complaint, filed May 7, 2007.** He also filed a claim, as Third Party Plaintiff, against the driver of the vehicle in which Plaintiff was riding, Andrea Tejesova. *Id.* **at 4.**

In September 2007, as the case was progressing, the Tribe filed a motion to intervene for the purpose of submitting additional evidence and argument in favor of dismissal on jurisdictional grounds. **Motion of Eastern Band of Cherokee Indians for Leave to Intervene and for Dismissal of the Case, filed September 27, 2007, at 1.** This Court allowed the Tribe's motion to intervene for the limited purpose of filing a renewed motion to dismiss. **Order, filed November 13, 2007, at 3.** In the same order, however, the Court indicated that the Tribe's motion to dismiss was denied. *Id.* Upon further motion by the Tribe, the undersigned

certified the November 13, 2007, order for appeal to the United States Court of Appeals for the Fourth Circuit.  **Motion to Certify that This Court's Order of November 13, 2007, Meets the Requirements of 28 U.S.C. § 1292(b) for an Interlocutory Appeal, filed December 3, 2007; Order, filed January 15, 2008, at 1.**

In early 2008, while the Tribe's appeal was pending, Plaintiff's attorney notified the Fourth Circuit that "all parties to the underlying tort case have settled this matter resolving all issues in controversy between them."  **Letter to United States Court of Appeal[s], filed February 22, 2008.**  The Fourth Circuit accordingly dismissed the appeal, citing a lack of case or controversy.  **Order, filed March 26, 2008, at 1.**

In April 2008, the Tribe filed the instant motion, which requests the Court to vacate its Orders of April 18, 2007, and November 13, 2007, "to reflect the fact that the Tribe's appeal of those Orders was terminated before the Fourth Circuit could rule on the critical jurisdiction issue."  **Motion of Intervenor Eastern Band of Cherokee Indians for Vacatur of Orders of April 18, 2007, and November 13, 2007, filed April 17, 2008, at 1.**

## II. STANDARD OF REVIEW

Vacatur of a prior judgment is an extraordinary remedy. ***U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994).** In *Bancorp*, the United States Supreme Court held that the decision whether to vacate an appellate opinion is an equitable decision, informed by two considerations: fault and public interest. *Id.* **at 24-27.** As to fault – the "principal" factor – the question is "whether the party seeking relief from the judgment below caused the mootness [of the appeal] by voluntary action." *Id.* **at 24.** As to public interest, since "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole," they "should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* **at 26 (quotation and citations omitted).**

Several years after *Bancorp* was issued, the Fourth Circuit clarified its applicability to district courts. *See **Valero Terrestrial Corp. v. Paige*, 211 F.3d 112 (4th Cir. 2000).** It held that, although the Supreme Court did not address "whether the standards governing district court vacatur for mootness are identical to the standards governing appellate court vacatur for mootness," nonetheless "*Bancorp*'s considerations of relative fault and public interest must also be largely determinative of a district court's

decision" on a motion for vacatur.  *Id.* **at 118.**  The Court recognized that these "*Bancorp* considerations are . . . of great relevance to the district court vacatur decision" even though the appellate and district courts derive their vacatur power from two distinct statutory sources.[2]  *Id.* **at 120.**   The *Valero* Court noted, that, indeed, "we cannot immediately think of considerations that would be particularly relevant . . . to the vacatur-for-mootness inquiry beyond those identified by the Supreme Court in *Bancorp*."  *Id.* **at 119.**

Accordingly, this Court will confine its inquiry to public interest considerations and an assessment of the Tribe's contributions to the present mootness of the case.

### III.  ANALYSIS

The first consideration listed in *Bancorp* is "whether the party seeking relief from the judgment below caused the mootness [of the appeal] by voluntary action."  **513 U.S. at 24.**  *Bancorp* notes that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries

---

[2] The appellate courts' vacatur power derives from 28 U.S.C. § 2106, whereas the district courts' vacatur power derives from Federal Rule of Civil Procedure 60(b).

of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id.* **at 25.** "The equities would favor vacatur where . . . mootness was based on intervening events not attributable" to the party requesting vacatur. ***Rio Grande Silvery Minnow v. Keys*, 469 F. Supp. 2d 1003, 1013 (D.N.M. 2005).**

Here, the Tribe, as intervening party, does not appear to have played any role in the settlement negotiations between Plaintiff Silvia Tejesova, Defendant Zahay Michael Bone, and Third Party Defendant Andrea Tejesova. Thus, the mootness resulting from the settlement cannot be said to arise out of the Tribe's voluntary action. This aspect of the analysis cuts in the Tribe's favor.

Nonetheless, the Court must also consider how vacatur would impact the public interest, and this aspect of the analysis cuts against the Tribe. *Bancorp* called vacatur "a refined form of collateral attack on the judgment" and expressed concern for "the orderly operation of the federal judicial system." **513 U.S. at 27.** The Court noted that "the public interest is best served by granting [a motion for vacatur] when the demands of 'orderly procedure' cannot be honored; we think conversely that the public interest requires those demands to be honored when they can." *Id.* **(internal**

**citation omitted) (quoting** *United States v. Munsingwear, Inc.*, **340 U.S. 36, 41 (1950)).**

Here, the undersigned declined to dismiss the case for lack of jurisdiction based on well-settled precedent from the Supreme Court:

> "[A tribe's inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations."  Neither regulatory nor adjudicatory authority over the [federal] highway accident at issue is needed to preserve the right of reservation Indians to make their own laws and be ruled by them.

***Strate v. A-1 Contractors*, 520 U.S. 438, 459 (1997) (quoting** *Montana v. United States*, **450 U.S. 544, 564, 566 (1981));** *see* **Order of April 18, 2007,** *supra***, at 8.**  The Court reasoned that the "'Tribe is not prevented in any way from exercising [regulatory and adjudicatory power] by being denied the right to adjudicate this garden variety automobile accident,'" especially in light of Defendant's admission that the accident took place on a federal highway – that is, land over which the Tribe has relinquished exclusive jurisdiction.  **Order of April 18, 2007,** *supra***, at 8-9 (quoting** ***Boxx v. Long Warrior*, 265 F.3d 771, 777 (9th Cir. 2001)).**  In light of the established authority supporting this outcome, the undersigned does not believe that a vacatur would serve to "honor" the "demands of orderly procedure."  ***Bancorp*, 513 U.S. at 27.**

The Tribe nonetheless argues that the Court's Orders of April 18, 2007, and November 13, 2007, "have the potential to cause considerable confusion as well as unnecessary litigation . . . . A vacatur would inform the public that the issue is still unsettled." **Motion for Vacatur,** *supra*, **at 5.** Another district court in this Circuit, faced with a similar motion from an intervenor, observed: "What the [intervenor] wants here is simply to get an unfavorable decision off the books. The Supreme Court, though, pointed out in *Bancorp* that the public interest in having judicial opinions stand ordinarily weighs against vacatur, which is, at base, an equitable remedy." ***Keeler v. Mayor & City Council of Cumberland*, 951 F. Supp. 83, 84 (D. Md. 1997) (internal citation omitted) (denying intervenor's motion for vacatur after case became moot between principal litigants);** *see also* ***Bancorp*, 513 U.S. at 27 ("The value of additional debate . . . seems to us far outweighed by the benefits that flow to litigants and the public from the resolution of legal questions.").** Considering this precedent, the Court is unconvinced that it would be in the public's interest to "inform [them] that the issue is still unsettled," as the Tribe argues. **Motion for Vacatur,** *supra*, **at 5.**

Furthermore, the Court believes that the public interest in upholding settled Supreme Court precedent outweighs the fact that the Tribe, as an non-principal party, did not play a role in causing this case to settle and become moot.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Tribe's motion for vacatur of this Court's prior Orders is hereby **DENIED**.

Signed: May 14, 2008

Lacy H. Thornburg
United States District Judge